UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>JOHN DAVIS TRUCKING COMPANY, INC.,<br><br>Defendant. | Case No. 3:11-CV-0461-HDM (VPC)<br><br>ORDER |

Before the court is the motion of John Davis Trucking Company, Inc. ("JDT") to strike (#s 299 & 300) Amtrak's notice of compliance (#297). National Railroad Passenger Corporation ("Amtrak") responded (#304), and JDT replied (#306). On January 15, 2014, the court heard oral argument on the motion, and this order follows.

**I.    Procedural Background**

    **A.    October 2013 Case Management Conference (#266)**

This dispute is based upon JDT's request for production of documents sent to Amtrak and specifically concern what the parties and the court refer to as items 13 and 14 (#s 263, 272 & 290):

> 13.    On demand request logs for locomotive units 43 and 177 for June 25, 2011, to and including the date on which the LDVR then in unit 43 was removed, and the date on which the hard drive caddy in unit 177's LDVR was removed. (See items 2.13 of Jordan screenshots, Kendal Exhibit 6, page 8 of 14).

>    14.   File attributes log or data for locomotive units 43 and 177 covering the time period specified in 13. (See item 2,14 of Jordan screenshots, Kendall Exhibit 6, page 8 0f 14.)

Joint case management report for October 4, 2013 (# 263, p. 3). At the October 4, 2013 hearing, the court ordered Amtrak to respond to these and other discovery requests by October 15, 2013 (#266). JDT found Amtrak's document production deficient, and JDT filed an emergency motion to compel compliance with the court's October order (#272). Amtrak responded (#281) and JDT replied (#286).

According to Larry Jordan of Wi-Tronix, remote video and data downloads go to Amtrak's back office server, including log information for such other downloads and other events occurring on Amtrak locomotives equipped with the Wi-Tronix system, and log information about the LDVR and event recorder equipment on the locomotives (#272, Jordan depo., pages, 17-18, 132, 144-45 (Ex.C)). Before Mr. Jordan testified as Wi-tronix's 30(b)(6) witness, he reviewed these files on an Amtrak server and made screenshots of those he reviewed. *Id.*, Ex. D, *under seal*. Pursuant to the court's October 4, 2013 order, Amtrak supplemented its response to item 13 by stating, "Amtrak does not know how to access the information or logs depicted in item 2.13 of Larry Jordan's notes," and referred to Mr. Jordan's deposition testimony that although Amtrak would generally have no reason to look at this date, Amtrak may have access to the logs, but may not know how to read them or what they meant (#272-1, Ex. A, pp. 4-5). As for item 14, Amtrak responded, "Amtrak does not know how to access the information or logs depicted on item 2.14 or Larry Jordan's notes. *See* Mr. Jordan's deposition testimony cited above. Thus, having conducted a reasonable and diligent search, Amtrak lacks the ability to comply with this request." *Id.*

**B.    November 2013 Case Management Conference (#290)**

JDT did not deem Amtrak's responses sufficient and filed a motion to compel compliance with court's order of October 4, 2013 (#s 272 & 273). Amtrak responded (#281), JDT replied (#286), and the court heard oral argument at the November 22, 2013 case management conference (#s 290 & 293). The court ordered Amtrak to supplement its responses

2

to items 8, 12, 13 and 14 by December 10, 2013, and directed Mr. Kirklin, JDT's counsel, to review the supplements and, if necessary, seek an expedited hearing on this issue (#290). The court added that if Amtrak was unable to provide supplemental responses, it was to file declarations with specific details about the inquiry undertaken, the identity of individuals with whom counsel conferred, and specific details regarding what systems were searched. *Id.*

### C.   Amtrak's Notice of Compliance (#297)

On December 11, 2013, the day after Amtrak was ordered to supplement its responses, it filed a document styled as a notice of compliance with court's order dated November 22, 2013 (#297). Amtrak reported that it completed its efforts to locate documents response to items 1, 5 and 8 and supplied the declaration of Clyde Moore concerning Amtrak's efforts to locate these documents. *Id.* Amtrak produced "two items from the Contract" and submitted item 12 to the court for *in camera* review. *Id.*

Amtrak reported that it completed production of documents for items 13 and 14, but went on to discuss at length the first entry from Log 2.13 found on page eight of the Jordan notes, which indicated the eighty-two-second video was requested thirty-five seconds before the accident occurred. *Id.* This eighty-two-second time lapse is the basis for JDT's contention that the downloaded video is a phony. *Id.* Amtrak attached the declaration of Lawrence Jordan, president of Wi-Tronix, to explain that "the "timeOfRequest" data, specific to the "automatic" download (username "Auto"), does not mean the Wi-PU made a request for the video data thirty-five seconds before the accident as alleged by JDT." *Id.* at 5; Ex. A, Decl. Of Lawrence B. Jordan, Jr.

### D.   JDT's motion to strike Amtrak notice of compliance (#s 299 & 300)

JDT moved to strike Amtrak's notice of compliance because (1) the court's November order did not authorize the unilateral filing of such a notice, (2) the court ordered Mr. Kirklin to review the supplemental responses and then notify counsel and the clerk if an emergency hearing was warranted, and (3) Mr. Kirklin did notify Mr. Castillo that he deemed the supplemental responses insufficient, but agreed to defer filing an emergency motion to allow Amtrak to

comply with the court's November order (#299). Amtrak opposed (#304) and JDT replied (#306).

In response, Amtrak reported that by its notice, it simply intended to advise the court of the status of its responses to this discovery dispute and that it subsequently produced log information for the new time period JDT requested for logs 2.13 and 2.14 (#304). Amtrak submitted the declaration of Mr. Jordan, president of Wi-Tronix, in response to JDT's contention that the eighty-two-second video is a "phony." *Id.* At the January 15, 2014 case management conference, Amtrak's counsel explained that because Mr. Jordan's logs had become a critical issue in the case, Amtrak simply sought a means by which the ambiguity could be explained. Mr. Jordan did not bring documents to his May 2013, deposition because he was not asked to do so and, thereafter, he produced the "Jordan logs."

JDT details in its reply four areas in which it deems Amtrak's December 10, 2013 supplemental responses deficient.[1] As noted earlier, JDT requests that Mr. Jordan's declaration be stricken (#306). According to JDT, Mr. Jordan's claims for the first time that when the Wi-PU requests an automatic video download, the Wi-PU is programmed to show the "Time of Request" as being the same as the "Requested Start of Data." *Id*. at 4. However, Mr. Jordan's declaration has no documentary support, nor does he explain "why the programming would be so illogical since the Wi-PU 'knows' the actual time of the request – in this case 11:19:30." *Id.* at 4 (footnote omitted). It is JDT's view that the document that discloses this particular time discrepancy is the fourteen-page set of notes and server log screenshot (#275), which Mr. Jordan prepared and reviewed in anticipation of his 30(b)(6) deposition, but did not bring with him to that May 2013 deposition. *Id.* at 5. The Jordan declaration is now an attempt to explain the time discrepancy seven months later, and it should be stricken.

At the January 15, 2014 hearing, JDT also provided the court with a copy of a log Amtrak produced after December 10, 2013, marked as Confidential NRPC 0304. JDT argues

---

[1] The court acknowledges that the initial motion to strike primarily concerned JDT's objection to Amtrak's unilateral filing of the notice of compliance, and JDT discussed in more depth in its reply the specific objection to Amtrak's December 10. 2013 supplemental production.

4

that the second entry, highlighted by JDT for purposes of the hearing, is not found in the Jordan logs, and it confirms JDT's suspicions that the logs are inaccurate or were somehow revised.

JDT raised three other issues in its reply. First, JDT argues that the Declaration of Clyde Moore in response to items 1 and 5, from Docket # 263-1, is inadequate because Mr. Moore discloses only that he spoke with other Amtrak employees who disclaimed personal knowledge, and that Mr. Moore has no idea what document search was made or who may have performed document searches. JDT requests that Amtrak be required to provide a new declaration to address the deficiencies and forth in detail the document searches it made, what was searched, who made the searches, where searches were performed, how they were done and when they were made (#306).

Next, as to item 8, JDT also sought user manuals, guides and training materials for the software and hardware that Amtrak employees used to configure LDVRs, event recorders, and Amtrak servers, and to download those devices remotely or by cable. Amtrak produced three items in response to these requests, none of which is particularly responsive or relevant to the underlying basis for the requests. *Id.* at 3-4. There is no declaration that provides an explanation of the nature of the document search Amtrak undertook to locate the documents, and JDT would like one.

Finally, JDT asks for the readable version (larger print) from Amtrak's server of the Wi-PU Internal Event Log for June 24, 2011. Wi-Tronix apparently considers the log proprietary.

## II. Conclusion

The court recognizes that JDT has pursued the production of the documents at issue for months and months, and it is apparent to the court that Wi-Tronix is the third party who can best explain the discrepancies between Mr. Jordan's logs and the document JDT provided the court at the January 15, 2014 hearing. The court is well aware of that fact discovery must end, and soon. However, this deadline must be balanced with the parties' need to complete legitimate discovery that may be pivotal to this case. Having considered the papers filed by the parties and arguments of counsel at the January 15, 2014 hearing, the court orders as follows:

### A. Mr. Jordan's Declaration and Motion to Strike

Discovery is the search for the truth. There are serious claims that the documents produced regarding items 13 and 14 contain discrepancies that may be critical to the parties' claims and defenses in this action. The court is not content to let this matter simply rest by either striking or allowing Mr. Jordan's declaration to stand and to leave open to question the time discrepancy in Mr. Jordan's notes and any explanation about the second highlighted line on the log produced at the January 15, 2014 hearing. For that reason, the court orders as follows:

1. JDT's motion to strike (#299) is **GRANTED**;
2. Amtrack's notice of compliance (#297) is hereby **STRICKEN** in its entirety;
3. JDT shall have leave to depose Mr. Jordan of Wi-Tronix concerning items 13 and 14, the Jordan logs, Mr. Jordan's declaration, and the log provided to the court at the January 15, 2014 hearing;
4. The fact discovery deadline will be extended for this limited purpose; and
5. Within ten calendar days of the date of this order, JDT shall report to the court the date set for Mr. Jordan's deposition.

### B. The Clyde Moore Declaration – Items 1, 5 & 8

1. Amtrak shall provide additional declarations concerning its efforts outlining in detail the document searches for items 1, 5 and 8, including who made the searches, what was searched, where the searches were performed, how the searched the searched were done, and when they were made; and
2. Amtrak shall have twenty calendar days from the date of this order to produce these declarations to JDT.

C. **Amtrak Document Production**

1. Amtrak and its witnesses shall be prohibited from relying upon any document not produced to JDT on or before December 10, 2013, with the exception of the documents Amtrak subsequently produced by December 30, 2013.

D. **Wi-PU Internal Event Log for June 24, 2011**

1. Amtrak is ordered to produce from its serve in readable format the Wi-PU Internal Event Log for June 24, 2011.

**IT IS SO ORDERED.**

Dated: January 30, 2014.

_____
VALERIE P. COOKE
UNITED STATES MAGISTRATE JUDGE

7